UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.:        -cv-

Scott Lehr,

    Plaintiff,

v.

The Keyes Company, a Florida Corporation
and Stanley Rosen, P.A., a Florida Corporation

    Defendants.
_____/

## PLAINTIFF'S COMPLAINT

COMES NOW, Plaintiff, SCOTT LEHR (hereafter referred to as "Plaintiff"), by and through the undersigned counsel, and hereby files this Complaint and sues Defendant, THE KEYES COMPANY (hereafter referred to as "Keyes"), a Florida Corporation, and Defendant, STANLEY ROSEN, P.A.(hereafter referred to as "Rosen"), a Florida Corporation (collectively referred to as "Defendants"), and in support avers as follows:

### JURISDICTION, PARITES, AND VENUE

1. This is an action by the Plaintiff exceeding the jurisdictional limits of this Court excluding attorney's fees or cost for damages pursuant to 28 U.S.C. Sections 1331 and 1343, in as much as the matter is in controversy is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sections 2000e et seq., to redress injury done to the Plaintiff by the Defendant for discriminatory treatment on the basis of gender and sexual harassment found on Plaintiff's complaint of discrimination in the workplace.

2. This is an action by the Plaintiff exceeding the jurisdictional limits of this Court excluding attorney's fees or cost for damages to redress injury done to the Plaintiff for tortious interference of contract and breach of contract.

3. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a). The state law claims in this action are so related to the claims within original jurisdiction of this Court that they form part of the same case or controversy.

4. Plaintiff is a resident of Broward County, Florida; Defendant KEYES is situated in Miami-Dade County, Florida; and Defendant ROSEN is situated in Broward County, Florida, within the jurisdiction of this Honorable Court.

5. Defendant, KEYES, is a Florida Corporation doing business in Miami-Dade County, Florida.

6. Defendant, KEYES is a "person" and/or an "employer" pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sections 2000e et seq., since it employs fifteen or more employees for the applicable statutory period; and it is subject to the employment discrimination provisions of the applicable statute.

7. Defendant, KEYES is a "person" within the purview of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sections 2000e et seq.

8. At all times material hereto Defendant, KEYES is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sections 2000e et seq.

9. Defendant, ROSEN is a Florida Corporation doing business in Broward County, Florida.

10. Defendant, ROSEN is a "person" and/or an "employer" pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sections 2000e et seq., since it employs fifteen or more

employees for the applicable statutory period; and it is subject to the employment discrimination provisions of the applicable statute.

11. Defendant, ROSEN is a "person" within the purview of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sections 2000e et seq.

12. At all times material hereto Defendant is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sections 2000e et seq.

13. At all times hereto, Plaintiff was an "employee" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sections 2000e et seq.

14. Plaintiff is a male former employee of the Defendant and is a member of a class of persons protected from discrimination in his employment.

15. Plaintiff previously filed a timely charge of employment discrimination with the Equal Employment Opportunity Commission and the Florida Commission on Human Relations, the agencies which are responsible for investigating claims of employment discrimination.

16. All conditions precedent for the filing of this action before this Court have been previously met, including the exhaustion of all pertinent administrative procedures and remedies.

## FACTUAL ALLEGATIONS

17. Plaintiff began his employment with Defendants on or around November of 2017 as a Realtor.

18. On or around November of 2017, Plaintiff entered into an enforceable contract with KEYES and ROSEN.

19. Per the contract, KEYES and ROSEN were to pay Plaintiff commissions for services rendered by Plaintiff.

20. According to the agreement between Plaintiff, Keyes, and Rosen, Plaintiff was to be paid either 20% or 33.3% of 2% to 3% of the sale price of the property sold depending on the listing.

21. On or about January 1, 2018, Plaintiff was promoted to Marketing Manager.

22. During his employment as Marketing Manager with Defendants, the Plaintiff was subject to both verbal and physical sexual harassment by his supervisor, Stanley Rosen.

23. Stanley Rosen began sending Plaintiff sexually charged text message, including pornographic pictures.

24. Stanley Rosen sent inappropriate texts and pictures of a sexual nature on numerous occasions. At the very minimum, Plaintiff received at least ten inappropriate texts from Stanley Rosen.

25. On numerous occasions, Stanley Rosen would make derogatory comments and jokes of sexual nature directed at Plaintiff.

26. On one occasion, Stanley Rosen asked Plaintiff to bend over so that he could grab Plaintiff's buttocks. Stanley Rosen followed this comment by telling Plaintiff not to worry because he had sexual harassment insurance and they could split the earnings.

27. Rosen's constant sexual remarks and advances made Plaintiff feel extremely uncomfortable.

28. Plaintiff felt emotionally unstable as a result of the sexual harassment.

29. Plaintiff always objected to and denied these sexual remarks and advances.

30. Plaintiff attempted to speak to the Executive Corporate Officer, Sherry, regarding Rosen's actions but she would not listen to Plaintiff. Plaintiff's conversation with Sherry was one-sided and against Plaintiff.

31. On or about July 27, 2018, Plaintiff stopped working for Defendants as a result of the sexual harassment he endured.

32. Since July 27, 2018 to date, Plaintiff has not received payments for all the services he rendered for Defendants.

33. Plaintiff is owed commissions for the property he sold while working for Defendants per the enforceable contracts.

34. On or about July 2018, Plaintiff closed a sale of over $400,000.00 to Ms. Corrine Lewis. Per Plaintiff's agreement with Defendants, Plaintiff should have been paid 20% of 2% to 3% of this sale. Plaintiff has yet to receive payment for this sale.

35. Plaintiff is owed payment for a home located in North Lauderdale, FL. The list price for the home is $195,000.00. Per agreement, Plaintiff is owed 33.3% of 2% to 3% of this sale.

36. Plaintiff is owed payment for a home located in Miami, Gardens, FL. The list price for the home is $358,000.00. Per agreement, Plaintiff is owed 20% of 2% to 3% of this sale.

37. Plaintiff is owed payment for a home located in Weston, FL. The list price for the home is $1,099,000.00. Per agreement, Plaintiff is owed 20% of 2% to 3% of this sale.

38. Plaintiff is owed payment for a home located in Sunrise, FL. The listing price for the home is $349,000.00. Per agreement, Plaintiff is owed 20% of 2% to 3% of this sale.

39. Prior to finishing his employment with Defendants on July 27, 2018, Plaintiff was being considered for a promotion to the position of Marketing Lead Generation by the Keyes Company.

40. Stanley Rosen, having knowledge of this potential promotion, contacted Keyes and pressed them to conduct a background investigation on Plaintiff, even though Plaintiff was already employed by Keyes at the time.

41. As a result of Stanley Rosen's interference, Plaintiff was not promoted to Marketing Lead Generation.

42. On or about October 22, 2018, Plaintiff was an agent for Daniel Ares at Gratitude Realty.

43. On or about October 22, 2018, Stanley Rosen, having knowledge of Plaintiff's business relationship with Daniel Ares, called Daniel Ares and bullied Mr. Ares into terminating Plaintiff's employment. Mr. Ares did in fact terminate his business relationship with Plaintiff as a result of Stanley Rosen's bullying and interference.

44. Plaintiff has suffered damages from the conduct of Stanley Rosen, the Defendants, and their agents.

## COUNT I
## SEXUAL HARRASSMENT UNDER TITLE VII

45. Plaintiff reasserts her allegations in paragraphs 1- 44 as fully set forth herein.

46. Section 200e-2 of Title VII of the Civil Rights Act of 1964 states in relevant part:

    "(1) It shall be an unlawful employment practice for an employer:

    >   (a) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin."

47. As part of its prohibitions, Title VII prohibits sexual harassment.

48. The conduct to which Plaintiff was subjected was severe, pervasive, physically threatening, humiliating, and unreasonably interfered with Plaintiff's work performance in violation of Title VII.

49. The sexually harassing conduct to which Plaintiff was subjected was perpetrated against as a result of his sex (male), and constituted actionable sexual harassment.

50. Defendants' alleged basis for its adverse conduct against Plaintiff and Plaintiff's constructive discharge are pre-textual and asserted only to cover up the harassing and discriminatory nature of its conduct.

51. Even if Defendant could assert legitimate reasons for its adverse actions against Plaintiff and Plaintiff's constructive discharge, which reasons it does not have, Defendant's sexually harassing conduct toward Plaintiff, and the aforementioned sexual comments/conduct and advances were also motivating factors for Defendant's adverse conduct toward Plaintiff and Plaintiff's constructive discharge.

52. As a result of the sexually harassing conduct to which the Plaintiff was subjected and the adverse employment actions suffered by Plaintiff related thereto, Plaintiff has experienced and will continue to experience significant financial and economic loss in the form of lost wages and lost benefits. Plaintiff has also experienced and will continue to experience emotional anguish, pain and suffering and loss of dignity damages. Plaintiff according demands lost economic damages in the form of back-pay and front-pay, interest, lost benefits, and compensatory damages.

53. Plaintiff also requests punitive damages based on Defendants' intentional, willful, wanton and malicious conduct.

54. Plaintiff further seeks his attorney's fees and cost as permitted by law.

WHEREFORE, Plaintiff respectfully requests for the entry of a judgment against Defendant and an award of economic damages in the form of back-pay and front-pay, lost wages, interest, lost benefits, as well as compensatory damages, punitive damages and attorney's fees and cost as a result of Defendant's conduct in violation of Title VII.

## COUNT II
## SEX/GENDER DISCRIMINATION UNDER TITLE VII

55. Plaintiff reasserts her allegations in paragraph 1-44 as fully set forth herein.

56. Section 200e-2 of Title VII of the Civil Rights Act of 1964 states in relevant part:

    "(1)   It shall be an unlawful employment practice for an employer:

    (b) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin."

57. Title VII accordingly prohibits discrimination based on sex.

58. The treatment to which Plaintiff was subjected by Defendant as set forth above and incorporated herein, was the result of Plaintiff's sex/gender, which female individuals were not and would not have been subjected, in violation of Title VII.

59. Defendant's alleged basis for its adverse conduct against the Plaintiff and Plaintiff's constructive discharge are pre-textual and asserted only to cover up the discriminatory nature of its conduct.

60. Even if Defendant could assert legitimate reasons for its adverse actions against Plaintiff and Plaintiff's constructive discharge, which reasons it does not have, Defendant's sexually harassing conduct toward Plaintiff, and the aforementioned sexual comments/conduct and advances were also motivating factors for Defendant's adverse conduct toward Plaintiff and Plaintiff's termination.

61. As a result of the sexually harassing conduct to which the Plaintiff was subject and the adverse employment actions suffered by Plaintiff related thereto, Plaintiff has experienced and will continue to experience significant financial and economic loss in the form of lost wages and lost benefits. Plaintiff has also experienced and will continue to experience emotional anguish, pain and suffering and loss of dignity damages. Plaintiff accordingly demands lost economic damages in the form of back-pay and front-pay, interest, lost benefits, and compensatory damages.

62. Plaintiff also requests punitive damages based on Defendant's intentional, willful, wanton and malicious conduct.

63. Plaintiff further seeks her attorney's fees and cost as permitted by law.

WHEREFORE, Plaintiff respectfully requests for the entry of a judgment against Defendant and an award of economic damages in the form of back-pay and front-pay, lost wages, interest, lost benefits, as well as compensatory damages, punitive damages and attorney's fees and costs as a result of Defendant's conduct in violation of Title VII.

## COUNT III
## BREACH OF CONTRACT

64. Plaintiff reasserts his allegations in paragraphs 1- 44 as fully set forth herein.

65. Defendants breached the contract by failing to Plaintiff for his services rendered.

66. On or about November of 2017, Plaintiff and Defendants entered into a valid contract wherein the Plaintiff was to sell homes and Defendants were to pay Plaintiff either 20% or 33.3% of 2.5% of the sale price.

67. Plaintiff immediately began performing his services under the contract.

68. Defendants breached the contract by failing to pay the Plaintiff for the services rendered by Plaintiff for the Defendants.

69. As a direct and proximate cause of the Defendants' breach, Plaintiff has suffered financial and economic damages.

70. Plaintiff was required to retain the undersigned counsel to represent the Plaintiff in this action in an effort to recover financial and economic damages as a direct result of the breach of contract.

WHEREFORE, Plaintiff respectfully requests for the entry of a judgment against Defendants for the direct, proximate and consequential damages it has suffered, including but not limited to prejudgment interest, post judgment interest, attorneys' fees and costs pursuant to the contracts between the parties and applicable Florida statutes, and any such other relief that this Court deems just and proper.

## COUNT IV
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

71. Plaintiff reasserts his allegations in paragraphs 1- 44 as fully set forth herein.

72. Prior to engaging in the aforementioned conduct, Defendants were fully aware that Plaintiff had a business relationship with Keyes which was very likely to result in economically-advantageous relationship between Plaintiff and Keyes.

73. Defendants engaged in the conduct alleged above with the intent with and/or destroy the economically-advantageous relationship between Plaintiff and Keyes.

74. As a direct and proximate cause of the Defendants' breach, Plaintiff has suffered financial and economic damages.

75. The conduct of Defendants as alleged herein was purposeful and intentional and was engaged in for the purpose of depriving Plaintiff of an economic-advantageous relationship.

76. There is no legal justification for Defendants' actions.

WHEREFORE, Plaintiff respectfully requests for the entry of a judgment against Defendants for the direct, proximate and consequential damages it has suffered, including but not limited to prejudgment interest, post judgment interest, attorneys' fees and costs pursuant to the contracts between the parties and applicable Florida statutes, and any such other relief that this Court deems just and proper.

## COUNT V
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP

77. Plaintiff reasserts his allegations in paragraphs 1- 44 as fully set forth herein.

78. Prior to engaging in the aforementioned conduct, Defendants were fully aware that Plaintiff had a contractual and business relationship with Daniel Ares and Gratitude Realty.

79. Defendants engaged in the conduct alleged above with the intent with and/or destroy the contractual and business relationship between Plaintiff and Daniel Ares.

80. As a direct and proximate cause of the Defendants' breach, Plaintiff has suffered financial and economic damages.

81. The conduct of Defendants as alleged herein was purposeful and intentional and was engaged in for the purpose of depriving Plaintiff of a contractual and business relationship.

82. Defendants' interference resulted in the termination of the contractual and business relationship between Plaintiff and Daniel Ares.

83. There is no legal justification for the Defendants' actions.

WHEREFORE, Plaintiff respectfully requests for the entry of a judgment against Defendants for the direct, proximate and consequential damages it has suffered, including but not limited to prejudgment interest, post judgment interest, attorneys' fees and costs pursuant to the contracts

between the parties and applicable Florida statutes, and any such other relief that this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands trial by jury of all issues triable as of right by jury

Dated:

                              Respectfully submitted

                              GALLARDO LAWOFFICE, P.A.
                              8492 SW 8th Street
                              Miami, Florida 33144
                              Telephone: (305) 261-7000
                              Facsimile: (305) 261-0088

By: _____
Elvis J. Adan, Esq.
Fla. Bar No.: 24223